UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MIRIAM HUMBACH,

      Plaintiff,

 -against-

DANIEL CANON et al.,

      Defendants.
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/19

13-CV-2512 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Mariam Humbach ("Plaintiff") proceeding *pro se* and *in forma pauperis*, asserts false arrest and excessive force claims arising out of her arrest on April 21, 2010 against Defendants Lieutenant Daniel Canon, Officer James Dumsar, Officer Robert Chiappone, Detective Daniel Corrado and Sargent Ernesto Giraldez ("Police Defendants" or "Defendants") pursuant to 42 U.S.C. § 1983. Presently pending is Police Defendants' Motion for Summary Judgement pursuant to Federal Rules of Civil Procedure Rule 56. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

### I. Factual Background

The following facts are drawn from the parties' 56.1 submissions and the record, and they are undisputed unless otherwise noted.

Plaintiff and her former husband, James Infantino, received a judgment of divorce in January 12, 2010 and had a visitation order in place for their son. (Svensson Affirmation Exs. C & Q, ECF No. 225-3 & 17); (Svensson Affirmation Ex. 11 ("Pl. Tr.") 47:4 – 8, ECF No. 225-

1

11.) On the morning of April 21, 2010, Plaintiff arrived at her son's school, the Douglas Grafflin Elementary School, to attend a bagel breakfast. (Pl. Tr. 27:14 – 25; 28:2 – 4.) Plaintiff used a print out of an invitation to the bagel breakfast to gain access to the school. (*Id.*); (Pl.'s 56.1 ¶ 3 – 4, ECF No. 233); (Defs.' 56.1 ¶ 4, ECF No. 229.) A couple of minutes after Plaintiff arrived, Michael Kirsch, the school principal, saw her; Principal Kirsch had previously been informed that Plaintiff was not to be in the school without Mr. Infantino's permission. (Defs.' 56.1 ¶¶ 7 – 8); (Pl.'s 56.1 ¶¶ 7 – 8.) Principal Kirsch asked Plaintiff to leave the school. (Pl.'s 56.1 ¶ 9.) Defendants allege that Plaintiff refused while Plaintiff contends she agreed to leave. (Defs.' 56.1 ¶¶ 9 – 11.) Eventually, the New Castle Police Department was called for assistance. (*Id.* ¶¶ 11 – 12); (Pl.'s 56.1 ¶¶ 11 – 12.) Defendants Dumser and Chiappone responded, and Principal Kirsch informed them that Plaintiff was not allowed on the premises. (Pl.'s 56.1 ¶¶ 12 – 14, 17, 20.) When the officers arrived, Plaintiff was in the bathroom and when she came out, Officer Dumser walked Plaintiffs out of the building. (*Id.* ¶¶ 15 & 18.)

Once outside, Plaintiff gave Officer Dumser a credit card for identification and a printout of the email invitation to the bagel breakfast. (Defs.' 56.1 ¶ 22); (Pl.'s 56.1 ¶ 22); (Pl. Tr. 160:3 – 20.) Defendants Dumser and Chiappone then arrested Plaintiff and charged her with criminal trespass, resisting arrest, and false personation. (Defs.' 56.1 ¶ 25 – 26); (Pl.'s 56.1 ¶ 25 – 26.) After the arrest, Defendant Dumser completed a Use of Force/Firearms report and indicated that "non-compliant handcuffing force was necessary to arrest Mariam J. Humbach who sustained redness around wrist area due to handcuffs." (Defs.' 56.1 ¶ 31); (Pl.'s 56.1 ¶ 31.) According to Plaintiff, she was beaten by Defendants during her arrest. (Pl. Tr. 120:7 – 12.)

Following the arrest, Plaintiff was taken to the New Castle Police Station where she was given ice packs and offered medical treatment; Plaintiff requested to go home instead. (Pl.'s 56.1

2

¶ 32); (Defs. 56.1 ¶ 32). Either later on April 21, 2010 or the next day, Defendant Corrado arrived at the Grafflin School and began conducting an investigation and obtaining eye-witness statements. (Pl.'s 56.1 ¶¶ 44, 45, 49 & 53); (Defs. 56.1 ¶¶ 44, 45, 49 & 53.)

On May 27, 2010, Plaintiff was examined by Manhattan Orthopedic & Medicine Group, P.C. (Defs.' 56.1 ¶ 33); (Svensson Affirmation Ex. EE ("May 27 Doctor Notes"), ECF No. 225-31.) Plaintiff told her physician that she was injured after she was pushed and fell. (Defs.' 56.1 ¶ 34); (May 27 Doctor Notes.) An MRI ordered by Plaintiff's physician showed spondylolisthesis. (Pl.'s 56.1 ¶¶ 36 – 37); (Defs.' 56.1 ¶¶ 36 – 37.) Other scans revealed that Plaintiff's left thigh showed tendinosis and a scan of the left hip indicated a small tear of the anterior right acetabular labrum, left ischiogluteal bursitis, and a partial tear of the conjoin origin of the left hamstring. (Pl.'s 56.1 ¶ 38 & 40); (Defs.' 56.1 ¶¶ 38 & 40.) On September 22, 2010, Plaintiff's physician concluded that the back pain and spondylolisthesis were congenital. (*See* Defs.' 56.1 ¶ 38); (Svensson Affirmation Ex. HH, ECF No. 225-34.) Plaintiff followed up with Manhattan Orthopedic & Medicine Group, P.C. on July 5, 2016, when she informed the doctor that her injuries resulted from being thrown down stairs. (Defs.' 56.1 ¶¶ 42 – 43); (Svensson Affirmation Ex. II, ECF No. 225-35.)

## II. Procedural History

Plaintiff initiated this action through her Complaint filed on April 12, 2013 against Defendants Daniel Canon, James Dumser, Michael Kirsch, Barbara Zanato, Debbie Alspach, Kahleen Campanaro, Deborah Lenaghan, Eileen Kelly, Lisa Tighe, Chiappone, Marisa Boniella, Joseph Kearns, D.P. Corrado, Ernesto Giraldez, and James Infantino. ("Complaint," ECF No. 2.) Plaintiff alleged that Defendants were liable for excessive force, malicious prosecution, false arrest, and entrapment in violation of 42 U.S.C. § 1983. Plaintiff also filed an application to

proceed *in forma pauperis* on April 12, 2013. (ECF No. 1.) On May 13, 2013, Plaintiff's request was granted. (ECF No. 3.) After considering the motions to dismiss submitted by Defendants, the Court dismissed all Defendants except for Defendants Canon, Dumser, Chiappone, Corrasdo, and Giraldez from the Action. (ECF No. 81); *Humbach v. Canon*, No. 13-CV-2512(NSR), 2014 WL 6057703, at *9 (S.D.N.Y. Nov. 12, 2014). Plaintiff's excessive force and false arrest claims were permitted to proceed against those Defendants and her other claims were dismissed. *Id.* Additionally, the Court granted remaining Defendants leave to renew their motion to dismiss Plaintiff's Complaint on the grounds that Plaintiff provided false information in bad faith on her *in forma pauperis* application. *Id.*

On December 6, 2017, Defendants filed a motion for summary judgment. (ECF No. 224.) Defendants first renew their motion to dismiss Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2) due to her intentional misrepresentation on her *in forma pauperis* application. Defendants also argue, in the alternative, that the Court should grant summary judgment on Plaintiff's false arrest claim because the police had probable cause to arrest Plaintiff and were also protected by qualified immunity. They assert that Plaintiff's excessive force claim also fails because Plaintiff failed to establish more than a *de minimus* injury that was related to her arrest and because, again, Defendants are entitled to qualified immunity. Additionally, Defendants state that Defendants Canon, Corrado, and Giraldez had no role in the arrest or use of force and that those Defendants should not be parties to this action.

## SUMMARY JUDGEMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record,

4

"including depositions, documents [and] . . .affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence [in] support" of such a contention. Fed. R. Civ. P. 56(c)(1)(B). A fact is material if a dispute over that fact could impact the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Id.* (quotations and citations omitted).

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a motion for summary judgment should fail. *Id.* at 258. Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quotations and citations omitted). The party asserting that a fact is genuinely disputed, however, must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations and citations omitted).

Where, as here, a party is proceeding *pro se*, this Court has an obligation to "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Perez v. Metro. Corr. Center Warden*, 5 F. Supp. 2d 208, 211 (S.D.N.Y. 1998) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); accord, *Soto v. Walker*, 44

5

F.3d 169 (2d Cir. 1995)). However, a *pro se* plaintiff, when responding to a motion for summary judgment, is still required to rely on more than the allegations in their complaint. *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 177 (S.D.N.Y. 2009). "[W]hen confronted with evidence of facts that would support summary judgment, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts." *George v. Rockland State Psychiatric Center*, No. 10-CV-8091(NSR), 2014 WL 5410059, at *3 (S.D.N.Y. Oct. 23, 2014) (quoting *Wali*, 678 F. Supp. 2d at 177) (internal quotation marks omitted).

## DISCUSSION

### I.     Effect of Plaintiff's misrepresentations on her *in forma pauperis* affidavit

The *in forma pauperis* statute, codified at 28 U.S.C. § 1915, allows courts to authorize the commencement of a civil suit without the prepayment of fees or security by a person "who submits an affidavit that includes a statement of all assets." 28 U.S.C. § 1915(a)(1). *In forma pauperis* status is a "privilege provided for the benefit of indigent persons." *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004). If a court determines that the allegation of poverty from an individual who was granted *in forma pauperis* status was untrue, which is an abuse of that privilege, the court "shall dismiss the case at any time." 28 U.S.C. § 1915(e)(2); *Williams v. Dep't of Corr.*, No. 11-CV-1515(SAS), 2011 WL 3962596, at *2 (S.D.N.Y. Sept. 7, 2011). If the *in forma pauperis* litigant's false statements were inadvertent or otherwise in good faith, revocation of the status is appropriate. *Quesada v. Matari*, No. 14-CV-0970(AT), 2015 WL 5820969, at *1 (S.D.N.Y. Sept. 15, 2015). However, where the litigant's misrepresentations "manifest bad faith," dismissal with prejudice is an appropriate remedy. *Id.*

Upon the completion of discovery, several of Plaintiff's representations in her 2013 *in forma pauperis* application have been revealed to be untrue based on evidence in the record, including Plaintiff's own sworn statements in her deposition. Plaintiff answered "N/A" when asked to state the dates and earnings for her last employment but later testified that her last place of employment was as a financial analyst for the New York State Attorney General. ("IFP Application" p. 1, ECF No. 1); (Pl. Tr. 16:8 – 21.) Plaintiff had held that position for ten years. (Pl. Tr. 17:2 – 3.) When asked if she had any money, Plaintiff answered that she did not despite evidence that Plaintiff had tens of thousands of dollars in the weeks before of her application spread across several retirement, savings, and checking accounts, including $40,372.19 in a Vanguard Roth Individual Retirement Account. (IFP Application p. 2); (Svensson Affirmation Exs. X, Y, Z, AA, BB, ECF Nos. 225-24, 25 & 26, 225-27 & 28.) Plaintiff also testified that she had money in multiple accounts at the time she filed the application, directly contradicting her responses on her application. (Pl. Tr. 194:5 – 24; 195:2 – 9.) Additionally, the record shows that Plaintiff withdrew thousands of dollars from an investing account and a checking account in the year prior to her *in forma pauperis* application. (Svensson Affirmation Exs. Z & BB.) However, when asked whether she had received any money in the past twelve months from any source, Plaintiff responded "no." (IFP Application p. 1.) Plaintiff stated that she did not own an apartment or other property in her application, but she in fact owned a condominium in New York. (IFP Application p. 2); (Svenson Affirmation Ex. R ("Marital Stipulation") Art. II, ECF No. 225-18.) Plaintiff represented that although she lived in the condominium, "pursuant to the marital agreements" she was unable to sell or refinance the residence. (Dec. 13, 2013 Letter, ECF No. 34);[1] (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") p 13,

---

[1] This letter is also attached to Defendant's motion for summary judgment. (Svenson Affirmation, Ex. JJ, ECF No. 225-36.)

ECF No. 232.) This too, is false, as evidenced by the Marital Stipulation entered into on June 30, 2010, and signed by Plaintiff, which contains no limitations on Plaintiff's ability to refinance the condominium. (Marital Stipulation Art. II.) Rather, the Marital Stipulation provides that Plaintiff received "exclusive ownership" of the condominium in 2010, presuming she delivered the money due to the escrow agent within fourteen days of the Marital Stipulation. (*Id.* Art. II., ¶¶ 2 – 4.)

Clearly, Plaintiff made multiple untrue statements in her *in forma pauperis* application. The Court determines that these misrepresentations were made in bad faith. Despite holding a position for ten years as a financial analyst, Plaintiff stated that the application's questions about the dates and salary of her previous position were not applicable and thus falsely suggested that she had never been employed. Plaintiff cannot assert in good faith that she forgot about employment lasting for a decade of her life. *See Vann v. Horn*, No. 10-CV-6777(PKC), 2011 WL 3501880, at *3 (S.D.N.Y. Aug. 9, 2011) (holding that a plaintiff's omission in response to a direct question on the *in forma pauperis* application demonstrated bad faith). The Court is also unpersuaded by any argument that Plaintiff misunderstood this or any other question in the application. Plaintiff herself testified that she held a college degree and two master's degrees, one in business administration and one in accounting. (Pl. Tr. 17:4 – 12.) Surely, a highly educated and experienced financial analyst such as Plaintiff could understand and respond to straightforward questions about her financial situation.

Plaintiff's misrepresentations about her access to money at the time she initiated the action are equally suspect. It defies logic and any contortion the Court could perform to give deference to the *pro se* Plaintiff that Plaintiff did not know about her accounts at the time of her application. She had thousands of dollars in various banks and investment institutions and had

withdrawn money from some of these accounts months before she completed her application for *in forma pauperis* status. *See Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) (holding that the plaintiff knowingly misled the court when she failed to report $13,500 she had agreed to accept from the government three weeks prior to her *in forma pauperis* application and noting that "it is 'inconceivable' that she innocently overlooked her obligation to report those funds"). As for the condominium, the plain language of the Marital Agreement, signed by Plaintiff years before the initiation of this action, indicated that she was owner of the condominium. Plaintiff should have stated on her application that she owned the condominium. Plaintiff offers no evidence to support her argument that it was her good faith understanding that she did not own the condominium due to a lien and certain unspecified terms in the Martial Agreement. *See Quesada v. Matari*, No. 14-CV-0970(AT), 2015 WL 5820969, at *1 – 2 (S.D.N.Y. Sept. 15, 2015) (holding that a plaintiff intentionally misled the court about her salary and finding that the plaintiff's excuse that she attached documents containing her true compensation to the *in forma pauperis* application to be a falsehood because no such documents were attached). "It is well-established that an allegation of poverty is untrue when an IFP applicant conceals a source of income in order to gain access to a court without prepayment of fees." *Cuoco*, 328 F. Supp. 2d at 468.

In her opposition, Plaintiff claims that at the time she filled out her application, she understood "that she did not have sufficient income to hire an attorney and was unemployed." (Pl.'s Opp'n p. 13.) However, the application did not ask Plaintiff whether she was employed or whether she had sufficient income to hire an attorney; the questions on the application were crafted to assist the Court in determining whether Plaintiff qualified to proceed *in forma pauperis*. That Plaintiff did not think she could afford an attorney does not excuse her

misrepresentations on her *in forma pauperis* application. Many litigants apply for *in forma pauperis* status, but the Court is only able to grant that status to those truly needing assistance. To allow litigants like Plaintiff to enjoy the benefits of this status based on intentional misrepresentations would not only be unjust to those who provide truthful answers to the application questions and are denied status, it would also undermine the authority of the Court.

Based on the totality of the circumstances, the Court determines that Plaintiff provided untrue statements on her *in forma pauperis* application in bad faith. Therefore, pursuant to 28 U.S.C. § 1915, the Court is required to dismiss Plaintiff's Complaint, and the Court dismisses said Complaint with prejudice.

## II. Defendants' remaining arguments
### A. False Arrest

Plaintiff argues that it was not reasonable for the Police Defendants to conclude Plaintiff was committing a crime and that, accordingly, Defendants lacked probable cause when they arrested Plaintiff. (*See* Pl.'s Opp'n p. 7.) However, the evidence in the record indicates that there is no genuine dispute that Defendants had probable cause to arrest Plaintiff.

In analyzing § 1983 claims for unconstitutional false arrest, Courts generally look to the law of the state in which the arrest occurred, New York in this case. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). To support a claim for false arrest under § 1983 or New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). Critically, probable cause is a complete and absolute bar to a plaintiff's recovery of

damages under § 1983. *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013); *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010); *Jaegly v. Couch*, 439 F.3d, 149 154 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). An officer has probable cause to arrest "when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Jaegly*, 439.F.3d. at 152 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). In the case where police officers receive information from a single victim or eyewitness, probable cause exists unless there is "any obvious reason for skepticism." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)).

Probable cause is an objective determination that hinges upon the information available to the officer at the time of the arrest and does not account for subjective motivations or interpretations. *See Whren v. United States*, 517 U.S. 806, 813 (1996). The validity of an arrest "does not depend upon an ultimate finding of guilt or innocence." *Hausmann v. Fergus*, 894 F. Supp. 142, 147 (S.D.N.Y. 1995) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)).

Plaintiff was arrested for criminal trespass in the third degree. A person is guilty of criminal trespass in the third degree when she knowingly enters or remains unlawfully in an elementary school either within or outside of a city in violation of a personally communicated request to leave the premises from the school principal. N.Y. Penal Law § 140.10(c) & (d).

Plaintiff's insistence that she cooperated with Principal Kirsch's demands and that she was allowed on the elementary school premises raises issues of fact as to her guilt of the underlying specific crime but not to whether Defendants Officers had probable cause, the object of the instant summary judgement motion. *See Arum v. Miller*, 331 F. Supp. 2d 99, 109

(E.D.N.Y. 2004) (finding that a factual issue concerning an element of the underlying criminal trespass charge was not material for the purposes of summary judgment.)

Here, it is undisputed that Principal Kirsch asked Plaintiff to leave the premises of the school. (*Compare* Svensson Affirmation Ex. A. pp. 14 – 15, ECF No. 225-1, *with* Pl. Dep. 62:25; 63:2 – 3.) Further, there is no factual dispute that Principal Kirsch told Police Defendants that Plaintiff was not allowed on school premises and that he had asked Plaintiff to leave the premises. (Svensson Affirmation Exs. E & G ¶ 7, ECF Nos. 225-5 & 6); (Pl.'s 56.1 ¶ 17); (Defs.' 56.1 ¶ 17.) Accordingly, based on the undisputed facts supported by the record, Principal Kirsch told the police on the scene that he had asked Plaintiff to leave the premises. "Such information, related by a person capable of revoking permission to be in the school, is sufficient to create probable cause for a police officer to arrest an individual for criminal trespass in the third degree." *Arum v. Miller*, 331 F. Supp. 2d 99, 109 – 10 (E.D.N.Y. 2004)

This alone was sufficient to show that Defendants had probable cause to arrest Plaintiff. The record also shows that there is no genuine dispute that Defendants had probable cause to arrest Plaintiff for resisting arrest. "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30. Plaintiff asserts that she did not resist arrest but rather that after giving the officers identification, she was thrown face down on the ground. (*See* Pl.'s Decl. in Opp'n to Defs.' Mot. for Summ. J. ¶ 19, ECF No. 231.) Plaintiff produced a video tape that the parties agree is of the incident in question. (Svensson Affirmation Ex. L, ECF No. 225-12.) While the screen is blank, the video plays audio of Plaintiff screaming, "I can't breathe." (*Id.*) However, there is no audio, beyond Plaintiff's isolated

statement, indicating that Police Defendants used excessive force. (*Id.*) However, Witness Connie Whiteouse, a parent at the bagel breakfast, gave the following sworn testimony:

> The police were giving her directions like "Ma'am, I need you to put your arms behind your back. Ma'am if you do not put your arm behind your back, I am going to have to tase you." As the officers were giving the directions, the woman was not complying in any way. She was twisting and flailing her arms. She even managed to twist herself under the guard rail that was close by. This struggled seemed to take approx. 5 minutes .... I thought the officers involved showed great patience. They were very calm and never raised there [sic] voices toward her.

(Svensson Affirmation Ex. J, ECF No. 225-10.) Similarly, Witness Joseph Kearns, a physical education teacher at the school and also present that day, provided sworn testimony:

> [I] observed two police officers restraining a woman, on the ground. I heard the woman yelling things like [sic] "I don't understand. What are you doing to me? I can't breath [sic]" While the woman was yelling, the police officers are giving her commands like, "We are arresting you. Put your hands behind your back. Stop resisting. If you don't stop we will have to tase you." . . . I thought the officers involved handled the situation appropriately. They seemed respectful and were trying to use just enough force to get her to stop fighting and comply with their commands. They were restraining her because she was resisting them.

(Svensson Affirmation Ex. A p. 25.) When faced with the evidence in the record, no reasonable jury could determine that there was a genuine dispute of material fact created by Plaintiff's audio when compared with multiple eye witness statements and the police report.

Accordingly, there is no genuine issue of material fact as to whether Police Defendants lacked probable cause when they arrested Plaintiff.[2]

---

[2] "The focus is simply on "the validity of the *arrest,* and not on the validity of each charge." *Costello v. Milano,* 20 F. Supp. 3d 406, 414 (S.D.N.Y. 2014) (quoting *Devenpeck v. Alford,* 543 U.S. 146, 154 (2004)).

## B. Excessive Force

Plaintiff next asserts that there are genuine issues of material facts as to the reasonableness of Police Defendant's use of force in effecting the arrest. (Pl.'s Opp'n p. 12.) Defendants argue that Plaintiff's excessive force claim must be dismissed because she failed to establish an injury that was more than *de minimis*. The Court agrees.

The Fourth Amendment " 'prohibits the use of unreasonable and therefore excessive force by a police officer' in the course of an arrest." *Graham v. N.Y.C.*, 928 F. Supp. 2d 610, 617 (E.D.N.Y. 2013) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)). "When excessive force is alleged, a court must determine 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Wims v. N.Y. City Police Dep't*, 10-CV-6128 (PKC), 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011) (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). When determining whether excessive force was used against a plaintiff, a court considers the totality of the circumstances, including "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with 20/20 vison of hindsight." *Graham*, at 490 U.S. at 396.

"[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment" as officers must use some degree of force when arresting an individual. *Id.* (internal citation omitted). "Instead, the forced used by the law enforcement officer must generally be more than *de minimis* for a claim to be actionable." *Antic*

14

v. *N.Y. City*, 273 F. Supp. 3d 445, 458 (S.D.N.Y. 2017) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d. Cir. 1993)). "*De minimis* injury can serve as conclusive evidence that *de minimis* force was used." *Washpon v. Parr*, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008) (quoting *Carr v. Deeds*, 453 F.3d 593. 606 (4th Cir. 2006)).

Here, there is no genuine dispute of material fact that the force used by Defendants did not exceed necessary force judged by the perspective of a reasonable officer at the scene. Defendant Officer Dumser's "Use of Force / Firearms Report," states that Plaintiff resisted arrest and that she only sustained some "redness around the wrist area" from "non-compliant handcuffing." (*See* Svensson Affirmation Ex. F, ECF No. 225-6.) Moreover, multiple eyewitnesses confirmed that Plaintiff was resisting arrest, and Plaintiff offers no evidence to show that she was not resisting arrest. *Supra* II(B).

Plaintiff alleges she had abrasions on her left elbow and right forearm and bruises on her arms, legs and, back after her arrest. (Pl. Tr. 180:19 – 25; 182:2 – 19.) However, Plaintiff provides no evidence to show that these injuries were the result of excessive force used during her arrest[3] beyond her unsubstantiated allegations that she suffered any more than minor injury associated with handcuffing. The effective use of handcuffs requires them to be tightly secured. *Washpon*, 561 F. Supp. 2d at 407 (citing *Esmont v. N.Y. City*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005)). "[M]inor injuries that result from tight handcuffs, such as temporary swelling, inflammation, or soreness of an arrestee's wrists, are insufficient on their own to sustain a Fourth Amendment excessive force claim." *Washpon*, 561 F. Supp. 2d at 407

---

[3] Plaintiff was offered medical treatment at the New Castle Police Station, which she refused in favor of taking public transit home. (Pl. Tr. 208:7 – 16.)

15

None of the medical documents in the record show that Plaintiff suffered more than *de minimis* injuries incident to her arrest. Plaintiff was examined by Manhattan Orthopedic & Medicine Group, P.C. on May 27, 2010, more than a month after the arrest occurred. (May 27 Doctor Notes.) There is no record of abrasions or bruising from the May 27, 2010 examination. (*See id.*) Tests resulting from this and other appointments revealed that Plaintiff had congenital spondylolisthesis and issues with disc deterioration which caused her back pain. (Svensson Affirmation Exs. EE, FF, HH & II.) Other scans showed that Plaintiff's left thigh showed tendinosis and a scan of the left hip showed a small tear of the anterior right acetabular labrum, left ischiogluteal bursitis, and a partial tear of the conjoin origin of the left hamstring. (Svensson Affirmation Ex. FF.) However, nothing in the record suggests that these issues are related to Plaintiff's arrest.

Considering the totality of the circumstances, that Plaintiff was arrested while resisting arrest and that she experienced no more than *de minimis* injuries, no reasonable jury could conclude that Defendants used excessive force.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED. The Court certifies, pursuant to 28 U.S.C. § 1915(3), that any appeal of this Opinion would not be taken in good faith. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 224, enter judgment for Defendants, and close this case. The Clerk of the Court is further directed to mail a copy of this Opinion to Plaintiff at her address on the docket and to show proof of service on the docket.

Dated: March 26, 2019
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge